The first case for argument this morning is 20-1587 Qualcomm v. Intel. Mr. Miyagawa, welcome. Thank you, Your Honor. It's a privilege to be back. May it please the Court, the Board's decision holding that Claims 1 through 9 Could you speak up a little? Oh, absolutely. Is this better, Your Honor? Yes. The Board's decision holding that Claims 1 through 9 and 13 would have been obvious in view of a three-reference combination Should be vacated and remanded for two independent but related reasons. On the central issues of Teaching Away and Hindsight Reconstruction, Some of the Board's analysis was a single paragraph on each issue. As to the Teaching Away issue, the Board's sole paragraph consisted of a handful of terse sentences That stated and restated the Board's conclusion and provided an incomplete legal test for Teaching Away. But otherwise, the Board did not provide any supportive explanation for its conclusion. As a result, the Board's decision contravenes this Court's fundamental principle That as an administrative agency, the Board must provide its own sufficiently detailed reasoning And its own explanation as to how and why it reaches the conclusions that it does. Well, let me just ask you about that because your argument seems to be sort of a swoosh Which is they didn't provide enough reason and you have questions about the reasoning they did provide. Well, on the second part of that, I think they said just what our case in Valderma said Which was what you need for Teaching Away And saying that CHOI-22010 does not discredit or criticize, blah, blah, blah. So, you know, you can always say more. We get these cases a lot with sufficiency. The more common thing is where the Board will just embrace one side or the other And not say much but just embrace and say, I agree with everything the petitioner has said. But why is this over the line? I mean, they said something. They had some analysis. They talked about the legal standard. I mean, you know, how much do they have to say? Different things require a different amount of analysis. And it's not clear to me that this case required so much more of a detailed analysis In order for us to appreciate what it's thinking was. So a couple of points, Your Honor. I think it's sentences three and four that I believe Your Honor is asking about With respect to paragraphs and appendix page 29. The third sentence really is, and the fourth sentence, they are conclusions. They repeat the boilerplate statement of Teaching Away And insert the words does not or do not in front of discredit or criticize. That is not a finding or an explanation. That is still a bottom line conclusion couched in the boilerplate language. Can I ask this? I think it's just a version of what Judge Post just asked. So there's standard law, as you know, that if we can reasonably discern the path that the agency took Then we can say, okay, we see that there. And they might have used words that made that more apparent. What substantively do you think is uncertain about the path? What are the possibilities that you think the board just didn't make clear enough it was full closing? So, Your Honor, one of the central issues before the board on Teaching Away Was whether Choi's teaching of always using a boosted voltage would lead a person of ordinary skill in the art In a path diverging from what the inventors did, which was a selected boost Using a battery voltage or first supply line voltage when the envelope signal is regular And using a boosted voltage only when the envelope signal was higher above the threshold. What the board needed to engage with and grapple is Why wouldn't Choi's teaching of always using a boosted voltage And its teaching that using a boosted voltage, always using a boosted voltage provides for a robust performance? I'm afraid I don't remember the details well enough. Does Choi say, it seems to me there are two possibilities. One is, in our system we always use a boost. Does it say, and it would be a bad idea to use a boost at least some of the time. I thought the board actually did fine that Choi sort of stopped at that first place. So, the board said, I believe in sentence three of paragraph 29  The board, to the extent anything can be gleaned from the board's analysis Is that the board determined that because Choi expressly didn't say Do not use a selected boost or did not expressly discredit selected boost It ended its inquiry there. But that, as a result, the board ended its inquiry precisely where this court instructs that inquiry must continue. And I think that this court's spectrolytics decision is instructive and directly on point. In spectrolytics, this court explained that teaching away does not require That the prior arc foresaw the specific invention that was later made And warned against taking that path. And this court further continued that it is indeed of interest if the prior arc warned Against the very modification made by the patentee. But it is not the sole basis on which a trier of fact could find that the prior arc Led away from the direction taken by the patentee. So the board needed to engage with the argument and explain why Choi's teaching To always boost would not have led a person of ordinary skill in the art In a path divergent from what the inventors did, which is use a selected boost Namely, sometimes use battery voltage and then occasionally use a boosted voltage Depending on the circumstances. And what was your evidence that Choi went beyond just saying In our system we always have the boost, but you can tell from Choi That Choi thought it was vitally important to always use the boost Because bad things would happen if you didn't. So Choi, the totality of Choi and specific statements in Choi make clear That the circuit is all about, the circuit is focused on the thrust of the disclosure. The article is about a circuit that always provides a boosted voltage. And it was cited to the board, and it's I believe in the second column Of the Choi reference, which is at appendix 1255 Where Choi teaches that in this paper a new supply modulator architecture Employing a boost converter is proposed. And it then says that by boosting up the supply voltage of the linear amplifier To five volts, regardless of the voltage variation That indicates that Choi is designed to always provide a boosted voltage. And then Choi further explains that by providing that boosted voltage At appendix 1256, Choi explains that thanks to the robust performance Of this proposed architecture, there's no degradation of the output power Gain and linearity. So the totality of Choi is about using a boosted voltage And he is teaching, the reference is teaching That there's advantages to doing it. So aren't you now arguing a substantial evidence question? I mean I get that, that you have arguments that the board's conclusion Is not supported by substantial evidence But the suggestion that they violated the APA Because they haven't given us sufficient reasoning to understand the issue Is belied by the very argument you're making. We understand that the choice was selected boost Versus the other kind of boost And that your argument is Choi taught away from that. They found not. And so if you want to say that finding is not supported by substantial evidence Why isn't that the argument you're making instead of this APA challenge? Because what the board, what's missing from the We understand the board's conclusion. It found it was not. But as this court has made clear in cases such as In-Rae Lee It is not enough to state a conclusion That Choi did not teach away. What the board must provide is articulated reasoning. And what it needed to do was But they provided a reasoning. You may disagree with that reasoning. You may disagree that it's sufficient. But it's half the reasoning. Don't, you know, get on this threshold APA analysis. We can look at Choi and see whether it supports or doesn't support teaching away. And that, your honor, is I think in some ways the problem Because the board didn't provide the explanation. It provided a conclusion. And it's now requiring this court to back, and counsel to back That's what substantial evidence is. We look at it and we determine whether it's substantial evidence. You're going back and back and saying the board didn't provide the analysis. We understand the board's legal conclusion. And we review legal and factual conclusion. Teaching away is a factual conclusion, I take it. We understand that that's the factual conclusion they made. And we get a look at the record, the entirety of the record And determine whether it's supported by substantial evidence. So if we understand the board's factual conclusion and how it got there And it didn't conjure it up out of thin air, which it didn't It explained exactly where it did. It may not have given the analysis. We're entitled, in fact, obligated to look at the substantial evidence. But this is not the way you argue the case about why Choi doesn't sufficiently teach that. So I presume Choi's board's conclusion is supported by substantial evidence, if we read Choi. Your Honor, our issue is that whether it may or may not be supported by substantial evidence There's no findings underlying, there's no rational explanation Or sufficiently detailed articulation of why Choi does not teach away from that. It is still a conclusion. Because it does not discredit or criticize selective boost. Are you saying that that is legal error? Because that's applying the wrong standard? Because another thing you said earlier in response to questions Sounded like you were saying that's not the right legal test. But you haven't argued that either. That's the analysis. They're saying Choi doesn't criticize it, so it doesn't teach away. If that's a wrong legal conclusion or the wrong legal test, you should have argued that. Although I don't think that's correct either. So, Your Honor, to the legal conclusion, whether we argue it. I believe it is argued at pages 31 through 33 of our brief Where we make clear that the board is applying an incomplete test. An incomplete legal standard for teaching away. And that is also why it does not That sounds like a better argument for you than this notion that the board is somehow citing Some kind of heightened, you know, reason-making requirement under the APA Beyond just telling us what their conclusions are, so we should review them. I'm sorry, I missed the first part of your question. I apologize. Go ahead. But to your point, Your Honor, I think what's missing here is not only did they I mean, I guess my point was, if you think you have a strong argument that the board Applied the incorrect legal determination, then why aren't you leading with that? Not just now, but in your briefs. Because that's a de novo review. And if they did err in the legal standard, that's something that is a much easier thing For us to get at than whether they've not given substantial evidence or misapplied The APA standard for explaining their conclusions. And, Your Honor, I believe that is in our opening brief with respect to teaching away. I know, you say it's there, but it's certainly not the first point. You lead with this notion that they haven't described their argument enough, which is almost always a loser. So I don't understand why you're focusing on basically asking us to grade their paper And saying they got an F. And they may have gotten a D minus, but they certainly didn't get an F, in my view. Perhaps it would have been better to lead with the legal argument. But they are tied together in the sense that, given the absence of any articulated reasoning There's no satisfactory fact findings to address that legal standard. And as a result, the substantial evidence standard isn't triggered Because the board's treatment of teaching away is deficient in that regard. Okay, thank you. You're into rebuttal. Let's hold the rest of your comments. Let's hear from the other side. Mr. Dowd, I wonder where you're at. Good morning, your honors. May it please the court. My name is Jim Dowd, and together with my colleague Kelly Powell, I represent Intel. There are many grounds on which your honors could affirm the decision below. I'm going to focus on just three issues and leave the rest to the briefs. The first is the motive to combine. The second is the teaching away. And the third is the alternative grounds to affirm on Claims 6, 8, and 13 based on claims. Your friend seems to think that the biggest problem here is that the board didn't explain its reasoning. So maybe you should address that. That's the focus of their argument, as baffling as that may seem to me. I agree with your honor. The board fully explained its reasoning. The standard that this court has set in the evasive, I believe Judge Prost articulated, is correct. It's can you discern the path that the board took below. Here you clearly can discern the path. On motivation, it articulated exactly what its motivation finding was. This is a 30 to 31 that Myers selection technique, the combination of Myers selection technique with the amplifiers of Chu and Choi, achieve battery efficiency during described operating modes. That is the motive. They achieve battery efficiency during described operating modes. In evasive, this court cited Nike and Allied. The second case was Allied. Those cases have a very similar articulation of what the motive was. Evasive actually cites those articulations as meeting the APA requirement. What about the teaching away part, which is, I think, what Mr. Myers was focused on? Let me answer that directly. There is a relationship between motive and teaching away, obviously. Motive is what impels the combination. Teaching away is- Impels would be a little strong, but- Maybe, yeah. But is there something that diverges- Points in that direction. Right? On that point, there are two key points that I'd like to make on that. The first is, although counsel's focused on the paragraph at the top of page 88A29, the analysis of Choi and what it teaches actually begins back on A22. I'm sorry, A23. And the key point here is, what did the board find about what Choi teaches? It found, and I'm quoting from A23, that Choi teaches the use of integrated boost converter quote to keep a stable operation of the power amp during supply modulator. Okay, so the teaching of Choi that the board found is keep stable operation. That's what you use this boost converter to do. There's nothing about that that's inconsistent with the improvement of efficiency that Myers teaches by using the boost only when you get to the battery degraded portion of operation. So there's nothing that is inappropriate about that. They then go on over A25, 6, 7, 8 to work through what Choi's teaching is. And so when we get to A29, here they're directly addressing the teaching away point. And they're saying, no, it doesn't teach away because it doesn't exclude or discourage the use of selective boost. It doesn't criticize or discourage the use of selective boost. Instead, it applies boost generally to achieve its goals. And this other statement I think is quite important. It doesn't discourage a person of ordinary skill in the art from working with the boosted voltage to achieve battery efficiencies. That's a direct linkage to the motivation that they found to come up. When they say it doesn't discourage from working with boosted voltage to achieve battery efficiencies, they're saying it doesn't discourage a person of skill who is implementing the circuit of Chu and Choi with Myers from working with the boosted voltage to do what Myers suggests, which over on A30 to 31 is to use Myers to achieve battery efficiency during described operating modes. So that's a pretty detailed analysis of the reference. It's a detailed analysis of why it doesn't teach away. My second point is it's an analysis that directly addresses what Qualcomm argued below to the board. And that's found at A60 in the – excuse me, in the – At A what? A – I'm sorry, I misspoke. A360, which is where the patent owner gave its actual teaching away argument. The teaching away argument that the patent owner gave was simply that Choi teaches a constant boost, and there's no other embodiment than that, right? And they say here – they're actually quoting the DePuy-Spine case, which says a reference does not teach away if it merely expresses a general preference for an alternative invention, but does not criticize, discredit, or otherwise discourage investigation into the invention claim. So it's no accident that that's the language that the board actually uses at A29 when it's setting forth its analysis. It says the same things. It says it addresses whether this constant boost teaches away. That's right at the top of the page. It goes on to say we're not persuaded by patent owner's evidence and argument. And they cite the specific pages of Choi that the patent owner relied on, which tells us that they actually went and analyzed what the patent owner relied on. And then they say, using the language of the DePuy-Spine case, that this mere fact of constant boost, in fact, doesn't teach away and, in fact, doesn't discourage, but instead applies boost generally to achieve its goals, not exclusively, generally to achieve its goals. So the board simply disagreed with the patent owner's argument. In some senses, what the patent owner is now arguing is that they should have gone further to prove a negative, but it was patent owner's burden below to demonstrate teaching away. That was their response to a prima facie case of obviousness. The board reviewed Choi, specifically cited the pages that patent owner relied on, and came to a different conclusion about those pages than the patent owner did. And that reasoning is, in the test of nuvasive, readily discernible from what they wrote. So with that, really, there is nothing more to do. Can I just ask you, we didn't reach it with Mr. Mayerweiss, but of course he can respond if he has something to say about this in reply. But his second argument, which he spends less ink on, is on this hindsight thing. And I guess we see a lot of these references to improper hindsight. Is it your view that the answer to hindsight is motivation to combine? So that if the board gives a fulsome analysis or adequate analysis of motivation to combine, that in and of itself responds to the argument that there was improper hindsight, or is more needed? No, I do think that is correct, because motivation to combine is meant to be a bulwark against use of hindsight. So the task of analyzing motivation to combine is to look at it from the perspective of a person at the time of patenting, essentially, at the time the invention was created. So by looking at it from that lens, they are looking at it not from today, but from back then. And that is a bulwark against motivation. But here I think they did go further. And this is on A27. They actually specifically look at it and find that the concerns, and I'm quoting here, the concerns with power degradation and efficiency, which patent owners, Clarence testified, were common concerns known before the 558 patent. They go on to say, we find that Petitioner presents persuasive evidence and argument that the issues of power degradation and efficiency were known in the art and within the knowledge of a person of ordinary skill in the art. So what they're saying is they are looking at this from the perspective of what a person of skill would know before the patent, and then they go on to credit the petition, credit the petitioner's argument. They specifically credit the argument and cite the pages, and that's the basis for the motivation to combine that they find. And they say that they're looking at it, and now we're on A30, at the time of patenting. So they very clearly were not using hindsight. They were saying, what would a person of skill at this time understand, from Choi, from Chu, from Myers, all of which are prior art. They also cite some secondary references, like the Maxim reference and the Mahara reference that they described in their analysis. And they come to the conclusion that there was this motive. So there, I think, there really is, again, not a lot more that could be said. And the standard here, as I alluded to, is can you reasonably discern what they did and why they did it? Here, I think you can reasonably discern what they did and why they did it, both on motive and on the teaching away point. I would just briefly turn to the alternative grounds for affirmance. I don't need to get too far down the line on this. But to the extent that you agree on the nubasive point, on whether they've met the APA requirements, there's no reason to get to claim construction. You don't need to get to those issues. But if, by any chance, you don't agree, there is an alternative basis to affirm, at least as to the claims, I believe it's 3, 6, and 8. Let me be sure I'm accurate about that. Claims 6, 8, and 13, sorry. And that is that this construction of the word or really is an alternative. If you look at the way that the board analyzed this, they say right up front that this word or states alternatives. That's the plain meaning. On a claim construction issue, on appeal, it's de novo review. You do take a fresh look at that question. And we would submit, and this is largely laid out in our papers, but we would submit that or states alternatives. And if that's true, then you look to, that's the plain meaning, you would look to the specification to see is there a lexicography or is there a disavowal. And here there is no lexicography or disavowal. And what the board did was say we're going to read that to require selective boost. We're going to require, rather than just the battery voltage or the boosted voltage, we're going to require both and we're going to require a selection between them. And that you can't find out of the specification because the specification discloses, it's in the abstract, it's in column 1, and it's in column 8, a boost only embodiment of the figure 3 of the patent. A boost only embodiment. And that they excluded in their construction. And we would suggest that's improper. That's all I think I need to say on that one. Thank you. Okay, thank you, Your Honor. Thank you, Your Honor. Just a couple of quick points on teaching away. Mr. Dowd focused, I believe, on the fourth sentence on paragraph... Excuse me one second. Oh, Mr. Dowd. Am I covering? Oh. Mr. Dowd focused on the fourth sentence in the board's analysis or discussion of teaching away on appendix page 29. And that sentence actually highlights and underscores the deficiency of the board's analysis. What that sentence says is we do not find that the teachings in Choi 2010 discourage a person of ordinary skill in the art from working with boosted voltage. That was never the issue. There was no dispute that Choi 2010 teaches, espouses, and avows working with boosted voltage. The issue was and remains whether that teaching would discourage a person of ordinary skill in the art from following the path that the inventors took, which is using a selective boost. Mr. Dowd also mentioned a couple of portions of the board's opinion. The portion on appendix page 23, that is a one-sentence summary of Choi reference. That is not a reasoned analysis or an articulation of reasons for why there's no teaching away. Then the rest of the passages that were referenced from page 25 to 28, those relate to a Chu and Choi combination. Those do not relate to the three-reference combination that is subject to this appeal. Just very briefly following up on a point that was made with respect to the legal standard. In In Re Li, this court made clear that omission of a relevant factor required by precedent is both legal error and arbitrary agency action. In Rovalma, this court explained that the board must, as to issues made material by governing law, set forth a sufficiently detailed explanation of its determination. The board here failed to do so with respect to whether Choi would have led a person born in a schoolyard in a path divergent from what the inventors did. And for that, we ask that you make your own amendment. Thank you. Thank you, Your Honor. I thank both sides and the case is submitted.